**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT, EASTERN DIVISION**

| | | |
|---|---|---|
| **DISGRASE FELYER** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 24 CV 12492** |
| | ) | |
| **VILLAGE OF ARLINGTON HEIGHTS** | ) | |
| **POLICE OFFICERS FILIPEK, FELSER** | ) | **Judge John J. Tharp, Jr.** |
| **CROON, DINOV, GACEK, and WHITE** | ) | **Magistrate Judge Holleb-Hotaling** |
| **POLICE RECORDS SUPERVISOR** | ) | |
| **SCHMIDT** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MOTION TO DISMISS PURSUANT TO §12(b)(6)**

NOW COMES the Defendant, VILLAGE OF ARLINGTON HEIGHTS (hereafter referred to as "Village," unless otherwise specified), by and through its attorneys HARTIGAN & O'CONNOR, P.C., and for their Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) hereby state as follows:

1. On December 5, 2024, Plaintiff DISGRASE FELYER (hereafter "Felyer") sued the Village, Arlington Heights Police Officers Filipek, Felser, Croon, Dinov, Gacek, and White, and Police Records Supervisor Maureen Schmidt. (Attached hereto as **Exhibit 1** is a copy of the complaint).

2. The Complaint alleges that on December 30, 2022, Felyer was arrested (for three traffic violations), not read his Miranda rights, his vehicle illegally searched and towed, held in jail, dragged out of jail, denied his right to an administrative hearing, and denied his right to face his accuser. (**Exhibit 1**, p. 4 ("Statement of Claims," section "C").

3. On April 11, 2024, Felyer filed a lawsuit in the Circuit Court of Cook County against the Village, Officer Filipek, and Maureen Schmidt, arising from the same December 30,

2022 occurrence. (Attached hereto as **Exhibit 2** is a true copy of the complaint (hereafter "*Felyer I*").[1] *Felyer I* alleges that Felyer was arrested on December 30, 2022, and his car was towed (**Exhibit 2**) .

4. *Felyer I* was dismissed without prejudice on November 20, 2024 (Attached hereto as **Exhibit 3** is a copy of said order).

5. On January 16, 2025, Felyer filed a motion for an extension of time to file his amended complaint in *Felyer I*, asserting, *inter alia*, that he "made the same allegations in a federal lawsuit against the Village." (**Exhibit 4**).

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient facts accepted as true, "to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a complaint's factual allegations need not be detailed, they must provide more than "labels, conclusions, or formulaic recitations of the elements of a cause of action and allege enough to raise a right to relief above the speculative level." *Ruiz v. Kinsella*, 770 F. Supp. 32d 936, 941-42 (N.D. Ill. 2011) (citing *Twombly*, 550 U.S. 555).

The court construes "the complaint in the light most favorable to the [non-moving party] accepting as true all well-pleaded facts and drawing reasonable inferences in the [non-moving party's] favor." *Yeftich v. Navistar*, Inc., 722 F.3d 911, 915 (7th Cir. 2013). However, the court "need not accept as true statements of law or unsupported, conclusory factual allegations." *Id.*

[1] Although on a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a court may "consider only the plaintiff's complaint[,]" *Rosenblum v. Travelbyus.com Ltd*., 299 F.3d 657, 661 (7th Cir. 2002), courts may take judicial notice of matter of public record at the motion to dismiss stage. *Fosnight v. Jones*, 41 F.4th 916, 922 (7th Cir. 2022) (finding that "[i]t's well established that judges may take judicial notice of matters of public record when ruling on a motion to dismiss."); *Ennenga v. Stams*, 677 F.3d 766, 773 (7th Cir. 2012) (collecting cases).

Where, as here, the complaint is filed *pro se*, it is "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, even under the above standard, *Felyer II* cannot survive dismissal.

## FACTS ALLEGED IN THE COMPLAINT

The case before this court (hereafter "*Felyer II*") alleges that on December 30, 2022, Arlington Heights Police Officer Filipek (hereafter "Filipek") conducted a traffic stop that resulted in his warrantless arrest for three "non-arrestable" violations of the Illinois Vehicle Code.[2] Felyer's car was searched and towed, and he was handcuffed, taken to "jail," and held for three hours. After three hours, he was asked to leave, but he refused. He was dragged out and let go without his hat and scarf, which had been put in this car at the scene of the arrest. He ultimately returned to the police station and slept on the floor. He was denied a hearing regarding the seizure of his car, and when the IVC citations were in court, "Filipek refused to show up[,] thus denying me my right to face my accuser." (See **Exhibit 1**, p. 4 "Statement of Claims" section "C).

The facts alleged assert, or attempt to assert (1) a seizure without probable cause (Fourth Amendment); (2) a violation of Miranda (Fifth Amendment); (3) an illegal search and seizure of his car (Fourth Amendment); (4) excessive force (Fourth Amendment); (5) cruel and unusual punishment (Fourteenth Amendment); (6) the right to face his accuser (Sixth Amendment), and ; (7) an unspecified "due process" violation for the denial of an administrative hearing.

## ARGUMENT

### I. Felyer has Engaged in Claim Splitting

*Both Felyer I* and *Felyer II* arise from Felyer's December 30, 2022, arrest and the towing

[2] Defendant assumes, for purposes of this motion, that the IVC citations were "fine only" violations.

of his car. (See **Exhibit 1**, p. 4, **Exhibit 2**, ¶ 8). Felyer claims he makes the same claims in *Felyer I* as in the case *sub judice*. (**Exhibit 4**, p. ). The first-filed case, *Felyer I* was dismissed without prejudice to the filing of an amended complaint. (**Exhibit 3**). Although *Felyer I* has not proceeded to final judgment and does not raise all the claims against all of the defendants alleged in *Felyer II*, it still is subject to the rule against claim-splitting.

The doctrine of claim splitting precludes a plaintiff from alleging claims that arise from the transaction or events that underlie claims brought in a previous lawsuit. *Rexing Quality Eggs v. Rembrandt Enterprises Inc*., 392 F.Supp.3d 965, 971 (S.D. Ind. 2019), *aff'd* 953 F.3d 998 (7th Cir. 2020); *Carr v. Tillery*, 591 F.3d 909, 913 (7th Cir. 2010) ("[A plaintiff] cannot maintain suit, arising from the same transaction or events underlying a previous suit, simply by a change in legal theory. That is called claims splitting"); *Scholz v. United States*, 18 F.4th 941, 952 (7th Cir. 2021).

Claim splitting and other preclusion doctrines (such as collateral estoppel and *res judicata*) exist to minimize "the expense and vexation attending multiple lawsuits, conserve[] judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions." *Matrix IV Inc v. Am. Nat'l Bank & Trust Co*., 649 F.3d 539, 547 (7th Cir. 2011) (internal quotations and citations omitted). The doctrine of claim splitting "prohibits a plaintiff from bringing a new action raising issues arising out of the same transaction or occurrence as an earlier case, when those issues could have been raised in the earlier litigation." *Hobbs v. Dart*, 2021 WL 1906465, at *3 (N.D. Ill. 2021). State courts (like Cook County, where *Felyer I* was filed), have jurisdiction over federal civil rights claims. *Blount v. Stroud*, 904 N.E. 2d 117 (Ill. 2009); *Felder v. Cassey*, 487 U.S. 131, 139 (1988) (finding that states have concurrent jurisdiction over 1983 claims and can hear them along with state causes of action).

Felyer was obligated to bring all of the claims arising from the occurrence on December 30, 2022, in one suit.

Claim splitting is based on the same principles as *res judicata* and bars both those issues that were actually decided in a prior lawsuit and all issues that could have been raised in the prior action. *Rexing*, 392 F.3d at 971 (citing *Barr v. Bd. of Trustees of W. Ill. Univ*., 796 F.3d 837, 839 (7th Cir. 2015)). However, unlike traditional *res judicata*, which requires a final judgment on the merits, claim splitting can be applied either before or after an action reaches a final judgment. *Rexing*, 392 F.Supp.3d at 972; *Scholz*, 18 F.4th at 952 ("the requirements of claim splitting are not quite as stringent and do not require … finality of judgment."). To determine if *Felyer II* is barred by the doctrine of claim splitting, it must be determined if there is (1) an identity of the parties in the two suits and (2) an identity of the cause of action. *Scholz,* 18 F.4th at 952.

**A. Identity of the Parties in *Felyer I* and *Felyer II***

In *Felyer I,* the plaintiff sued the Village of Arlington Heights. Arlington Heights Police Officer Filipek, and Maureen Schmidt. (**Exhibit 2**, *'Felyer I*"). *Felyer II* names the Village of Arlington Heights, Officer Filipek, and Maureen Schmidt but also Officers Felser, Croon, Dinov, Gacek, and White. (**Exhibit 1**, p. 4). However, even if the parties in the two actions are not identical, the rule against claim splitting still applies if there is "privity" between the parties. *John Daley, LLC v. Nudo*, No. 21 cv 6067, 2023 WL 1818907, at *3 (N.D. Ill., Feb. 8, 2023). Courts apply a "functional approach" when determining whether parties are in privity in successive actions. *Dig Dynamics Software, Inc. v. Eclipse Gaming Sys. LLC*, No. 18 C 892, 2018 WL 2463378, at *8 (N.D. Ill., June 1, 2018). It is the identity of interest that controls in determining privity, not the nominal identity of the parties. *Rexing*, 392 F. Supp.3d at 972.

Even though there is no complete identity for the parties in *Felyer I* and *Felyer II,* the

individuals in *Felyer II* are in privity with the Village of Arlington Heights. *LeSure v. Walmart, Inc., No.* 23-cv-01002-BHL, 2023 WL 8356796, at *4 (E.D. Wis., Dec. 1, 2023 ("Employees of a business or corporation are in privity with their employer for purposes of res judicata."); *Henry v. Farmer City Bank*, 808 F.2d 1228, 1235, fn. 6 (7th Cir. 1986) ("Even Though the Bank was the only actual party to the state foreclosure proceedings, the other defendants, as directors, officers, employees, and attorneys of the bank, are in privity with the Bank for purposes of *res judicata*."); *Talano v. Bonow, No*. 00 C 1208, 2002 WL 31061198, at *2 (N.D. Ill., Sep. 16, 2002). This prong is easily satisfied.

**B. Identity of the Cause of Action between *Felyer I* and *Felyer II***

The Seventh Circuit has held that this element is satisfied for claim splitting purposes even if the legal theories are the same as long they are based on the same, or nearly the same, factual allegations. *Scholz*, 18 F.4th at 952. Once a transaction has caused an injury, all claims arising from the transaction must be brought in one suit or be lost. *Car Carriers, Inc v. Ford Motor Co*., 789 F.2d 589, 593 (7th Cir. 1986). The fact that Felyer pleads different legal theories in *Felyer II* is irrelevant because both suits arise out of the same facts. *Scholz*, 18 F.4th at 952.,

Because both elements of claim splitting are met, *Felyer II* should be dismissed with prejudice. *Parungao v. Cmty. Health Sys. Inc*., 858 F.3d 452, 457 (7th Cir. 2017) ("when it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law, dismissal is appropriate."); *Conley v. Windows, LLC of Indiana*, No, 20 cv 02572, 2021 WL 2256262, at *5 (S.D. Ind., June 3, 2021) ('Because [plaintiff] cannot amend his complaint to remedy the fact that he engaged in improper claim splitting dismissal with prejudice is appropriate.")

## II. The Complaint's Allegations are Insufficient.

Even if the case is not barred by the doctrine of claim splitting, the allegations are insufficient.

### A. False Arrest

Felyer alleges he was arrested without a warrant for "non-arrestable" violations of the IVC but does not identify what the violations were. But, even if the violations were "fine only," as of December 30, 2022, Illinois police officers could make warrantless arrests for any offense, including those punishable by fine. *Ricci v. Arlington Heights*, 116 F.3d 288, 290 (7th Cir. 1997) (Illinois law authorizes arrest for fine-only ordinance violations finding that 725 ILCS 5/107-2(1)(c) does not differentiate)[3]; *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (holding that police may make a full custodial arrest for fine-only offenses) *People v Taylor*, 902 N.E.2d 751, 759-60 (2009) (custodial arrest for violation of municipal ordinances); *Ramos v. City of Chicago*, 716 F.3d 1013, 1018 (7th Cir. 2013) (finding that "[w]e have held that a traffic violation can constitute probable cause for an arrest, including driving without a license," or failing to present a license); *United States v. Jackson*, 377 F.3d 715, 717 (7th Cir. 2004) (once driver failed to produce a license, the police could not put him back in the car and watch him motor off). So, contrary to the allegations in the complaint, at least when Felyer was arrested in 2022, Illinois permitted warrantless arrests for violations of the IVC.

### B. Failure to Mirandize

The Fifth Amendment prevents a person from being "compelled in any criminal case to be a witness against himself." *Chavez v. Martinez*, 538 U.S. 760, 766 (2003). First, the complaint

[3] Although 725 ILCS 5/107-2(1)(c) still permits a peace officer to arrest a person if he has "reasonable grounds to believe that the person is committing or has committed an offense," effective January 1, 2023, 725 ILCS 5/109-1 was amended to provide that, with some exceptions, "[l]aw enforcement shall issue a citation in lieu of arrest, upon proper identification, for those accused of any offense that is not a felony or a Class A misdemeanor…"

does not allege that any unwarned statements were elicited and later used against Felyer. Secondly, the Supreme Court has made clear that a *Miranda* violation "is not redressable in a suit for damages." *Fosnight v. Jones,* 41 F.4th 916, 923 (7th Cir. 2022); *Vega v. Tekoh*, 597 U.S. 134, 150-54 (2022).

### C. Search and Impound of Car

#### 1. Inventory Search

An inventory search is a well-recognized exception to the warrant requirement. *United States v. Cartwright* , 630 F.3d 610, 613-14 (7th Cir. 2010) (citing *South Dakota v. Opperman* , 428 U.S. 364, 376, (1976)). An inventory search is lawful if: (1) the individual whose vehicle is to be searched was lawfully arrested; and (2) the search is conducted as part of a routine procedure incident to incarcerating an arrested person and in accordance with established inventory procedures. *Id.* at 614. The decision to impound the vehicle is analyzed separately from the decision to inventory the vehicle. *Id.* Felyer alleges he was arrested, and, if he was lawfully arrested (see infra, sec. II.A), the first prong for an inventory search is satisfied. That leaves whether the search was in accordance with established inventory procedures. An Arlington Heights Police Department General Order provides that the inventory search was in accordance with routine procedure. (**Exhibit 5**).[4] The impoundment of the car is analyzed separately.

#### 2. Impoundment of Vehicle

---

[4] A court can take judicial notice of matters of public records without converting a motion for failure to state a claim into one for summary judgment, (*General Electric Capital Corp v. Lease Resolution Corp*, 128 F.3d 1074, 1080 (7th Cir. 1997)), but only an adjudicated fact that is both "not subject to reasonable dispute" and either 1) generally known within [this] territorial jurisdiction, or 2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed.R.Ev. 201(b). The court may also take judicial notice of state statutes, city charters, and city ordinances. See *Demick v. City of Joliet*, 108 F.Supp.2d 1022, 1025 (N.D. Ill. 2000); see also *Driebel v. City of Milwaukee*, 298 F.3d 622, 630, n.2 (7th Cir. 2002) (court judicially noticed Milwaukee Police Department manual of rules and regulations).

Illinois law regulates the circumstances of permissible impoundment. Felyer alleges that he was arrested for violations of the IVC and taken to "jail." Following an arrest, the police were authorized to remove and impound his vehicle. *People v Braasch*, 122 Ill. App. 3d 747 (2d Dist. 1984) (interpreting a prior version of 625 ILCS 5/11-303 of the Code as prohibiting the defendant's having his car towed after being stopped and arrested on the highway); *United States v. Duguay*, 93 F.3d 346, 353 (7th Cir. 1996) ("Under Illinois law, impoundment is permissible only when the arrestee was not able to provide for immediate removal of the vehicle."); *U.S. v. Cartwright*, 630 F.3d 610, 615 (7th Cir. 2010). Since Felyer was arrested, and there are no allegations that another licensed driver was available to provide the removal of the car, the towing was authorized by Illinois law. (625 ILCS 5/11-302/11-1303).

**D. Excessive Force**

Felyer alleges that, after he refused to leave "jail," he was "dragged" out. Although not entirely clear, that allegation could be construed as alleging excessive force. However, the complaint fails to plead sufficient facts identifying the actions that constituted excessive force.

Section 1983 claims involving the alleged use of excessive force are analyzed under the Fourth Amendment.[5] *Abdullah v. City of Madison*, 423 F.3d 763, 768 (7th Cir. 2005). The crux of the inquiry is whether the circumstances, viewed as a whole, justified the particular type of seizure that occurred. Although the plaintiff has used the formulaic "dragged" to suggest that the seizure at issue was unreasonable, the complaint is devoid of allegations establishing that the use of force was "excessive." A plaintiff alleging excessive force must identify the specific unreasonable conduct that caused his or her injuries. *Stainback v. Dixon*, 569 F.3d 767, 773, n.7

[5] Although the Due Process Clause of the Fourteenth Amendment governs a claim of excessive force against a pretrial detainee (*Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015), courts evaluate claims regarding the conditions of confinement for pretrial detainees who have not had a judicial determination of probable cause under the Fourth Amendment's reasonableness standard. *Williams v. Rodriguez*, 509 F.3d 392, 403 (7th Cir. 2007).

(7th Cir. 2009); *Abdullahi v. City of Madison*, 423 F.3d 763, 770-71 (7th Cir. 2005). There is no allegation that the defendants intentionally or recklessly harmed Felyer. *Legg v. Pappas*, 383 Fed. Appx. 547, 551 (7th Cir. 2010). Felyer alleges that when he refused to leave the "jail," he was "dragged" out, but that does not establish that the force used was unreasonable. Defendants submit that it is not excessive force to escort an uncooperative suspect from the premises, particularly if it is not accompanied by gratuitous force. Not every push or shove violates an arrestee's Fourth Amendment rights. *Graham v. Connor*, 490 U.S. 386, 396 (1989). Because Felyer refused to leave, his willful noncompliance justified the officers' minimal use of force. *Phillips v. Community Ins. Corp.*, 678 F.3d 513, 525 (7th Cir. 2012). Police officers may use minimal force when an arrestee passively refuses to comply with orders. *Smith v. Ball State Univ.*, 295 F.3d 763, 770-71 (7th Cir. 2002).

Moreover, Felyer fails to allege he was injured because of the "dragging." Although a plaintiff does not need to show a physical injury to sustain an excessive force claim (*Baird v. Renbarger*, 576 F.3d 340, 344 (7th Cir. 2009)), whether there was an injury is a relevant factor in determining whether an officer used excessive force. *Chelios v. Heavener*, 520 F.3d 678, 690 (7th Cir. 2008); *Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 687 (7th Cir. 2007) (finding that the type and severity of a plaintiff's injuries are relevant to whether excessive force was used). The lack of any claimed injury to Felyer supports the argument that there was no substantial force.

Finally, the defendants are entitled to qualified immunity based on the allegations. Qualified immunity is more than a "mere defense to liability," it provides "immunity from suit." *Smith v. Finkley* , 10 F.4th 725, 737 (7th Cir. 2021) (quoting *Mitchell v. Forsyth* , 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985)). The Supreme Court has thus "repeatedly ...

stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Doe v. Village of Arlington Heights*, 782 F.3d 911, 915-16 (7th Cir. 2015) (quoting *Saucier v. Katz* , 533 U.S. 194, 201 (2001)); *Crawford-El v. Britton* , 523 U.S. 574, 598 1998). Still, case law suggests that dismissal under Rule 12(b)(6) on qualified immunity grounds is inappropriate in many cases, *see Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) (noting "that a complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds. . . [b]ecause an immunity defense usually depends on the facts of the case"), but not always. *Chasensky v. Walker,* 740 F.3d 1088, 1095-97 (7th Cir. 2014) (holding that the plaintiff failed to establish a clearly established right and the district court erred in denying the defendants' motion to dismiss on qualified immunity grounds); *Steidl v. Fermon*, 494 F.3d 623, 633 (7th Cir. 2007) (reversing denial of motion to dismiss plaintiff's access-to-the-courts claim because officials were entitled to qualified immunity). The doctrine of qualified immunity "'gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012)) (quoting *Ashcroft v. al-Kidd* , 563 U.S. 731, 743 (2011) ). As applied to an excessive force claim, "the qualified-immunity doctrine gives enhanced deference to officers' on-scene judgments about the level of necessary force." *Dockery v. Blackburn*, 911 F.3d 458, 466 (7th Cir. 2018) (quotation marks omitted). "This is so because, even if the plaintiffs demonstrate that excessive force was used, they must further establish that it was objectively unreasonable for the officer to believe that the force was lawful - *i.e.*, they must demonstrate that the right to be free from the particular use of force under the relevant circumstances was 'clearly established.' " *Abbott v. Sangamon County*, 705 F.3d 706, 725 (7th Cir. 2013).

"Qualified immunity is an affirmative defense, and once raised, the plaintiff bears the burden of defeating it by showing: (1) the defendant violated a constitutional right, and (2) that the right was clearly established at the time of the alleged violation." *Sinn v. Lemmon,* 911 F.3d 412, 418 (7th Cir. 2018) (citing *Archer v. Chisholm*, 870 F.3d 603, 613 (7th Cir. 2017) ). "A failure to show either is fatal for the plaintiff's case." *Id.* (quoting *Archer*, 870 F.3d at 613).

The Supreme Court has instructed courts not to define clearly established law at too high a level of generality. *Ashcroft v. al-Kidd,* 563 U.S. 731, 742 (2011). It is not enough that a rule be suggested by then-existing precedent; the rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *City of Tahlequah, Oklahoma v. Bond*, 595 U.S. 9, 12 (2021) (*per curiam*) (internal quotations and citations omitted). "Specificity is especially important in the Fourth Amendment context where it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officers confronts." *Mullenix v. Luna,* 577 U.S. 7, 12 (2015). Here, Felyer simply alleges that when he refused to leave the "jail," he was dragged out. Taking that allegation as true by itself does not establish that a clearly established right was violated.

The undersigned finds no binding Seventh Circuit authority establishing that the police use excessive force when they simply escort a passively resisting suspect from the premises.

**E. Cruel and Unusual Punishment**

The cruel and unusual punishments clause of the Eighth Amendment does not apply to persons who have not been convicted. *Smentek v. Dart*, 683 F. 3d 373, 374 (7th Cir. 2012). However, the due process clause of the Fourteenth Amendment has been interpreted as providing equivalent protection. *Id.* To establish the claim, Felyer must establish that he was incarcerated

under conditions that posed a substantial risk of serious harm, and the defendants were deliberately indifferent to that risk. *Grievson v. Anderson*, 538 F.3d 763, 775 (7th Cir. 2008) (internal citations omitted).

As an initial matter, Felyer does not complain that the conditions of the "jail" where he was held for three hours posed a risk of serious harm, but rather that he was released without a hat and scarf and spent the night sleeping on the floor of the police station. Felyer was not in custody at the time, but even if the Defendants did make him sleep on the floor of the police station, that does not violate the Due Process clause. *Antonelli v. Sheehan*, 81 F. 3d 1442, 1430 (7th Cir. 1996) (affirming a 12(b)(6) dismissal of a claim brought by a detainee finding that sleeping on the floor without a mattress for one night did not constitute actionable punishment). The allegations in the complaint are insufficient to establish that Felyer suffered actionable punishment.

**F. Denial of Right to Face Accuser**

The Complaint alleges that when the traffic citations he received on December 30, 2022, were up in court, "Filipek refused to show up thus depriving me my right to face my accuser." (**Exhibit 1**, p.4, "III. Statement of Claim," section "C") The Sixth Amendment provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of Counsel for his defense. U.S. Const. Amend. VI

Although the Complaint does not plead the outcome of the citations, this claim is not plausible. The Supreme Court has held that the right to confront one's accusers is a fundamental right embodied in the Sixth Amendment and applies to states under the Fourteenth Amendment's

Due Process Clause (*Pointer v. Texas*, 380U.S. 400, 403 (1965)) and to deprive an accused of the right to cross-examine the witnesses against him is a denial of the Fourteenth Amendment's guarantee of due process of law. *Id.* at 405. However, no violation of the Confrontation Clause has been alleged. The Confrontation Clause bars the admission in court of "testimonial statements of witnesses absent from trial unless the witness is unavailable to testify, and the defendant had a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36, 59 (2004). The *Crawford* prohibition "applies only to testimonial hearsay" that is admitted at trial to establish the truth of the matter asserted in the statement. *Davis v. Washington*, 547 U.S. 813, 823-24 (2006); *see also Crawford*, 541 U.S. at 60, n.9. The Sixth Amendment right is related to a criminal defendant's ability to confront his accusers as part of a fair trial. *Newell v. Hanks*, 283 F.3d 827, 837 (7th Cir. 2002). But Felyer does not allege that Filipek's failure to appear denied him a fair trial. In fact, it is not alleged that there even was a trial, much less an allegation that he was convicted as a result of testimonial hearsay without having the right to confront his accuser. *Linder v. McPherson*, 14 cv 2714, 2015 WL 739633 (N.D. Ill., Jan. 29, 2015). Therefore, the Complaint fails to plead a Sixth Amendment violation.

**G. Failure to Provide Administrative Hearing**

Felyer complains he was denied an administrative hearing for the seizure of his car. The Fourth Amendment "cannot be invoked by the dispossessed owner to regain [his] property." *Lee v. City of Chicago*, 330 F.3d 456, 466 (7th Cir. 2003) ((city's conditional release of an impounded car upon the payment of towing and storage fees was neither a continuation of the car's initial seizure nor the commencement of another seizure); *Bell v. City of Chicago*, 835 F.3d 736, 741-42 (7th Cir. 2016) (plaintiff cannot invoke the Fourth Amendment to challenge a city's procedures after a government officer or agent seizes and impounds a vehicle).

However, the Due Process Clause of the Fourteenth Amendment can be used to challenge post-seizure procedures. *Bell*, 835 F.3d at 741. But, Felyer has availed himself of post-seizure procedures by filing suit in state court against the Village, among others, for violating his right to an administrative hearing. The ability to litigate in state court is all the process due for a state actor's unauthorized departure from the requirements of state law. *Simmons v. Gillespie*, 712 F.3d 1041, 1044 (7th Cir. 2013 (internal citations omitted); *Veterans Legal Defense Fund v. Schwartz*, 330 F.3d 937, 941 (7th Cir. 2003) (while a plaintiff is not required to exhaust state remedies to bring a § 1983 claim, this does not change the fact that no due process violation has occurred when adequate state remedies exist); *Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984) (availability of damages remedy in state claims court is an adequate, post-deprivation remedy). Felyer has availed himself of state post-deprivation remedies and has not alleged those are inadequate. *LaBella v. Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 943 (7th Cir. 2010).

WHEREFORE, for all the foregoing reasons, the Defendant, Village of Arlington Heights, respectfully requests this Honorable Court dismiss the Plaintiff's Complaint with prejudice and for such other and further relief as this court deems just.

/s/ Patrick H. O'Connor________
Patrick H. O'Connor, one of the attorneys for the Defendant, Village of Arlington Heights

Patrick H. O'Connor, ARDC No. 06207351
Michael R. Hartigan, ARDC No. 06272365
HARTIGAN & O'CONNOR P.C.
53 West Jackson Blvd., Suite 460
Chicago, IL 60604
Tel. 312/235-8880
Fax 312/235-8884

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, states that on the 12th day of February 2025, he electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent notification to all parties of record.

/s/ Patrick H. O'Connor___

Patrick H. O'Connor, ARDC 06207351
Michael R. Hartigan, ARDC 06272365
HARTIGAN & O'CONNOR P.C.
53 West Jackson Blvd., Suite 460
Chicago, IL 60604
Tel. 312/235-8880
Fax 312/235-8884